**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**JENNIFER ENLOW** **PLAINTIFF**

**V.** **CASE NO. 5:25-CV-05256**

**COMMISSIONER,**
**Social Security Administration** **DEFENDANT**

# OPINION AND ORDER

Before the Court is the Report and Recommendation ("R&R") (Doc. 14) of the Honorable Christy Comstock, United States Magistrate Judge for the Western District of Arkansas, regarding Plaintiff Jennifer Enlow's request for judicial review of the decision to deny her claim for disability insurance benefits under the provisions of Title II of the Social Security Act. The Magistrate Judge recommends affirming the Administrative Law Judge's ("ALJ") finding that Ms. Enlow can perform light work with restrictions and is not entitled to benefits. Ms. Enlow filed three Objections to the R&R (Doc. 15). The Court has reviewed the record *de novo* and now rules on the Objections below.

Ms. Enlow filed an application for disability insurance benefits on March 10, 2023, alleging possible rheumatoid vasculitis and possible toxic mold exposure. (Doc. 7, p. 91). An administrative hearing was held on August 13, 2024, and a supplemental hearing was held on January 10, 2025. On January 31, 2025, the ALJ found that Ms. Enlow was not disabled within the meaning of the SSA. The ALJ concluded that:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant must not have more than occasional exposure to extreme cold and hazards. She can carry-out and remember simple instructions (by which I mean unskilled work). She cannot perform work requiring a specific production rate but can perform to

> end of workday measures. She can tolerate occasional interactions with the public, co-workers, and supervisors.

(Doc. 7, p. 24). The ALJ concluded that Ms. Enlow could perform work as a housekeeper, a merchandise marker, and a collator operator. *Id.* at p. 33. Ms. Enlow requested a review of the ALJ's decision by the Appeals Council, which was denied. She then filed this action.

The Court reviews this case *de novo* to "ensure that there was no legal error and that the findings of fact are supported by substantial evidence on the record as a whole." *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016); *see* 42 U.S.C. § 405(g). Substantial evidence is a less onerous burden than preponderance of the evidence: it is satisfied when a reasonable mind would accept the evidence as "adequate to support [the ALJ's] conclusion." *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). The Court "must consider evidence in the record that fairly detracts from, as well as supports" the ALJ's decision in its substantial evidence analysis. *Id.*

Ultimately, if the Court determines that the ALJ's decision is supported by substantial evidence on the record as a whole, then it must affirm. *Myers v. Colvin*, 721 F.3d 521, 524 (8th Cir. 2013) (citing *Davidson v. Astrue*, 578 F.3d 838, 841 (8th Cir. 2009)). In other words, the Court may not reverse simply because substantial evidence exists in the record that could have supported a contrary outcome, or because the Court could have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Remand is warranted, however, where "the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit [the] [c]ourt to conclude that substantial evidence supports the Commissioner's decision." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008).

Each of Ms. Enlow's three Objections to the R&R suggest the residual functional

capacity ("RFC") determination is not supported by substantial evidence. A social security claimant's RFC is "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). An RFC determination must be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Myers*, 721 F.3d at 527 (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). An ALJ "is not limited to considering medical evidence exclusively," *Harvey v. Colvin*, 839 F.3d 714, 717 (8th Cir. 2016) (citation omitted), nor is she "required to discuss every piece of evidence submitted." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted). But it is well established that a "claimant's RFC is a medical question" that "must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.* (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). The claimant carries "[t]he burden of persuasion to prove disability and to demonstrate RFC." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005).

**1. Direct and Concrete Supervision**

Ms. Enlow argues that the RFC erroneously excluded a limitation to direct and concrete supervision. She claims that the ALJ was required to include this limitation because the ALJ otherwise found the opinion of Dr. Julie Wood-Warner, a state agency medical consultant, persuasive. (Doc. 11, p. 4). Dr. Wood-Warner noted that Ms. Enlow "appears able to perform [simple, routine, repetitive tasks] w/ incidental interpersonal and direct/concrete supervision." (Doc. 7, p. 96). She also marked that Ms. Enlow's "ability to sustain an ordinary routine without special supervision" and her ability to carry out very simple and short instructions are "not significantly limited." *Id.* at p. 97. The R&R

concluded that the RFC is "harmonious with the limitations set forth by Dr. Wood-Warner." (Doc. 14, p. 9).

It is true the RFC encompasses some, but not all, of Dr. Wood-Warner's recommendations by limiting Ms. Enlow to unskilled work with occasional interaction. *See* SSR 96-9P (explaining that unskilled work includes "[u]nderstanding, remembering, and carrying out simple instructions"); *Turner v. Soc. Sec. Admin.*, 2024 WL 964176, at *3 (E.D. Ark. Mar. 6, 2024) (concluding a limitation to occasional interaction encompasses a limitation to incidental interpersonal contact). And this is proper because "the ALJ is free to accept some, but not all, of a medical opinion." *Austin*, 52 F.4th at 729; *see also Wyatt v. Kijakazi*, 2023 WL 6629761, at *1 (8th Cir. Oct. 12, 2023) (per curiam) (concluding that an ALJ is "not required to adopt the exact limitations set forth in the opinions she found persuasive").

Ms. Enlow asserts that remand is required because an ALJ must explain her decision to not include a limitation found in an opinion she otherwise found persuasive. And she cites various district court opinions from across the Eighth Circuit which have required such explanations. *See, e.g.*, *Batson v. Kijakazi,* 2022 WL 501405, at *4 (W.D. Mo. Feb. 18, 2022) ("Because the ALJ found Dr. Allen's opinions to be persuasive, supported by objective evidence, and consistent with the record, the ALJ should have included all limitations set forth by Dr. Allen."). However, Ms. Enlow's case differs from those she cites.

For example, Ms. Enlow relies on *Stillian v. Dudek.,* 2025 WL 1019086 (W.D. Ark. Apr. 4, 2025), for the claim that an ALJ must explain why she chose not to adopt a limitation. (Doc. 11, p. 4). In *Stillian*, the RFC stated that the plaintiff could have "frequent

interaction with coworkers, supervisors, and occasional interaction with the public." 2025 WL 1019086, at *1. But the psychological consultants' persuasive opinions noted that the plaintiff was limited to "work where interpersonal contact was incidental to the work performed . . . and where the supervision required would [be] simple, direct, and concrete." *Id.* at *3. The court concluded that the ALJ impermissibly failed to reconcile the conflict between the ALJ's findings and the consultants' opinions. *Id.* The court's decision to remand focused on the obvious difference between the ALJ's and consultants' opinions regarding the frequency of interactions, not the lack of a supervision limitation. *Id.* Therefore, the Court disagrees that *Stillian* warrants remand.

Because Ms. Enlow is not significantly limited in her ability to sustain an ordinary routine without special supervision or her ability to carry out very simple and short instructions, the Court cannot conclude that it was error for the ALJ to omit a supervision limitation or that it was error to not explain the omission. Accordingly, the Court **OVERRULES** this Objection.

**2. End of Workday Measures**

Next, Ms. Enlow objects to the ALJ's conclusion that Ms. Enlow "cannot perform work requiring a specific production rate but can perform to end of workday measures." *See* Doc. 7, p. 24. Ms. Enlow suggests that the term "end of workday measures" is a specific production rate, so the RFC contradicts itself. She also argues the term is ambiguous because the definition she provided is irreconcilable with the definition the Commissioner provided.

The Court disagrees that the term is contradictory and ambiguous. Instead, the Court concludes performing to end of workday measures does not require working at a

consistent pace. Rather, it imposes quotas that must be met at the end of the day, not hour by hour. *See, e.g*, *Logan-Wilson v. Berryhill,* 2017 WL 4381589, at *4 (E.D. Mo. Sept. 28, 2017) (explaining that the "ALJ limited production quotas to be based on end of workday measurements only"). Therefore, the RFC accurately reflects Ms. Enlow's moderate ability to work at a consistent pace. *See Chismarich v. Berryhill,* 888 F.3d 978, 980 (8th Cir. 2018) (per curiam) (concluding that an RFC limitation to "work at a normal pace without production quotas" addressed the plaintiff's moderate limitation in concentration, persistence, or pace). Accordingly, the Court **OVERRULES** this Objection.

**3. Limited Communication**

Lastly, Ms. Enlow claims that the ALJ should have included an additional limitation in the RFC regarding her inability to effectively communicate. The RFC limits Ms. Enlow to "occasional interactions with the public, co-workers, and supervisors." (Doc. 7, p. 24). Ms. Enlow suggests this limitation reaches only the frequency of her communications not the nature of the communications. *See* Doc. 14, p. 9. To support her claim, Ms. Enlow relies on the report from Dr. Suzanne McKenna, a psychological consultative examiner, who concluded that Ms. Enlow "displayed a limited capacity to communicate in an intelligible and effective manner." (Doc. 7-6, p. 98). However, the ALJ justified her decision not to include additional communication limitations based on Ms. Enlow's ability to adequately communicate with her providers. (Doc. 7, p. 29). Ms. Enlow disagrees, arguing that her ability to adequately communicate with her providers does not mean she does not require further communication limitations.

The Court concedes that a limitation to "occasional" communication does not necessarily address the nature of communication. *See Katlynn R. v. Dudek*, 2025 WL

1737449, at *6 (D. Minn. May 12, 2025), report and recommendation adopted, 2025 WL 1736949 (D. Minn. June 23, 2025) ("An occasional limitation addressing the quantity of interactions is distinguishable from a superficial limitation addressing the quality or nature of those interactions.") (citation modified). But the Court concludes that the ALJ's explanation for not including further limitations—that Ms. Enlow can communicate with her providers—is sufficient justification. "Whether the ALJ should have provided additional limitations amounts to a disagreement over the weighing of evidence within the record, and it is not this Court's role to reweigh that evidence." *Austin*, 52 F.4th at 731. Accordingly, the Court **OVERRULES** Ms. Enlow's third Objection.

**IT IS THEREFORE ORDERED** that Ms. Enlow's Objections are **OVERRULED**. The R&R (Doc. 14) is **ADOPTED IN ITS ENTIRETY**, and the findings of the ALJ are affirmed.

Judgment will enter concurrently with this Order.

**IT IS SO ORDERED** on this 20th day of November, 2026.

TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE